UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

**RICHARD MARTINEZ,**

                Plaintiff,

       - against -

**SR. PAROLE OFFICER C. BROWNE** and **PAROLE OFFICER C. BRATTON,**

                Defendants.

-------------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

20-CV-111 (AMD) (ST)

**ANN M. DONNELLY,** United States District Judge:

On January 2, 2020, the *pro se* plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging constitutional violations by Parole Officer Chavela Bratton, Senior Parole Officer Hubert Browne and former Deputy Commissioner of Community Supervision Steven Claudio. (ECF No. 1.) I granted the defendants' motion to dismiss as to the plaintiff's Eighth Amendment claims and his claims against Deputy Commissioner Steven Claudio, and allowed the other claims to proceed. (ECF No. 30.) On May 27, 2022 the defendants moved for summary judgment. (ECF No. 54.) For the reasons discussed below, the motion is granted in part and denied in part.

## BACKGROUND

The plaintiff, a native New Yorker, was convicted of murder in New Mexico, and was sentenced to life in prison. He was paroled on December 21, 2006. (ECF No. 54-2 ¶2; 57-1 at 31.) He returned to New York to serve his parole under the supervision of the New York State Department of Corrections and Community Supervision ("DOCCS"). (*Id.* ¶3.) As a parolee, the plaintiff was subject to certain special conditions, including a prohibition against using any

substance that "impairs his stability without proper medical authorizations," and requiring him to participate in and successfully complete any programs to which his parole officer referred him. (ECF No. 55-1.)

The plaintiff experiences chronic pain from injuries to his back, chest and knee, and from osteoarthritis.  (ECF No. 57-1 at 36-37.)  To address this pain, the plaintiff has been prescribed various muscle relaxers and narcotic pain medications, including codeine, over the years.  (ECF No. 57-1 at 21.)  In order to comply with his parole conditions, the plaintiff regularly gave his prescriptions to his parole officer.  (*Id*. at 55.)  Before he was assigned to Officer Bratton, he "never had difficulties" with his parole officers about his prescriptions, and no other parole officer had required him to attend drug treatment.  (ECF No. 57-1 at 55, 57.)  Before he moved to Queens, the plaintiff's parole officer would come to his home once a month and check in by phone "every once in a while."  (*Id*. at 55-56.)  The plaintiff claims that before June 2017, he tested positive for controlled substances only once or twice, and only because he was taking his prescribed medication.  (ECF No. 57-1 at 71.)

The plaintiff also concedes, however, that he violated the conditions of his parole when he used heroin "on and off" in 2010, when he was not being tested for drug use, and that he sought treatment on his own.  (*Id*. a 23-25.)  In addition, the plaintiff used heroin "off and on in 2018, 2019 and 2021, as well as methadone in 2019 and 2021, but "wasn't severely addicted to the drug and only used it on occasion when he didn't have any pain medication or ran out of pain meds."  (ECF No. 64-1 ¶6.)

The plaintiff moved to Queens in 2016 and was assigned to that borough's parole office. (ECF No. 57-1 at 52.)  Records show that the defendant checked in with his parole officers weekly or biweekly, with home visits, office reports and phone calls.  (ECF No. 55-2 at 27-38.)

In May 2018, the plaintiff was assigned to Parole Officer Chavela Bratton.  (ECF No. 55 ¶5.) Four other parole officers, whom the plaintiff does not name, knew that the plaintiff had various prescriptions, and warned the plaintiff "to be careful" with Officer Bratton.  (ECF No. 57-1 at 53.)  The plaintiff kept the same schedule with Officer Bratton, but "every time" he saw her Officer Bratton told him to stop taking his prescription medication.  He assured her he was not addicted, but she "threatened him with incarceration," and told him to "shut up" whenever he tried to talk to her.  (ECF No. 57-1 at 58-59.)  The plaintiff gave Officer Bratton two prescriptions, for codeine and naproxen.  He had another prescription for morphine, which he got after he fell in 2018.  (*Id*. at 18, 63-64, 69.)

In October 2017, the plaintiff tested positive for opiates, and he showed Officer Bratton his prescription for hydrocodone.  (ECF No. 55-2 at 25.)  Officer Bratton ordered the plaintiff to attend a drug treatment program.  Although the plaintiff resisted, he eventually enrolled at Samaritan Village in Queens, and tested negative for drugs.  (ECF No. 57-1 at 26; ECF No. 55-2 at 24.)  Counselors and medical specialists at the program determined that the plaintiff was not "addict[ed] to any drugs, wasn't using any illegal drugs, had no drug problem whatsoever and didn't need to go to a program."  (ECF No. 1 at 71.)  They gave him a letter stating that he did not have a drug problem; when he gave the letter to Officer Bratton, she "exploded" and "continu[ed] to threaten and harass" the plaintiff. [1]  (*Id*.; ECF No. 57-1 at 67.)  Officer Bratton's notes reflect that she spoke to the director of Samaritan Village, who confirmed that they were "awaiting test results to see if [the plaintiff] meets criteria for admission to program as it appears [the plaintiff] has taken medication as prescribed by doctor for medical condition."  (ECF No. 55-2 at 23 (entry dated December 7, 2017).)

---

[1] The plaintiff claims that Officer Bratton has the only copy of this letter.  Neither party produced the letter with their submissions.

3

During this period, the plaintiff wrote to the Albany Parole Office twice, complaining about Officer Bratton, including that she forced him into drug treatment. The Albany office ignored the first letter but opened an investigation into Officer Bratton after the second, in January 2018. (ECF No. 1 at 3; ECF No. 57-1 at 75.) Officer Bratton subsequently told the plaintiff, "I'm going to get you." (ECF No. 57-1 at 77.) On January 17, 2018 Officer Bratton took the plaintiff to Senior Parole Officer Hubert Browne's office, and yelled at the plaintiff in front of Officer Brown. (ECF No. 55-2 at 22; ECF No. 56 ¶¶7-9.) When the plaintiff complained to Officer Browne about Officer Bratton's conduct, Officer Brown said, "I support my officers and I don't care what you have to say." (ECF No. 1 at 3.) Officer Browne denies making this statement. (ECF No. 56 ¶8.) His contemporaneous notes reflect that the plaintiff denied accusing Officer Bratton of threatening to put him in jail and that he said that "he had no issues" with Officer Bratton. (ECF No. 55-2 at 22; *see also* ECF No. 56 ¶¶9.) An unsigned January 31, 2018 entry on the plaintiff's parolee chronological report "recommend[ed] change to level 2, new arrest."[2] (ECF No. 55-2 at 21.) Officer Bratton continued to check in on the plaintiff, without incident, with home visits and phone calls for the next few months.

On April 4, 2018 the plaintiff gave Officer Bratton his prescription for naproxen and diltazen, neither of which are opiates or synthetic opiates. (ECF No. 55 ¶12.) On April 25, 2018, the plaintiff tested positive for opiates, synthetic opiates and morphine. (ECF No. 55-2 at 19; ECF No. 55-4). In contemporaneous notes, Officer Bratton wrote that neither the naproxen or the diltazen would have resulted in positive morphine or synthetic opiate results. (ECF No. 55-2 at 19.) The plaintiff maintains that Officer Bratton forged the positive result for the synthetic opiate. (*See e.g.*, ECF No. 64-1 ¶17; ECF No. 65 ¶6.) He says that he had a

---

[2] Neither party explains the meaning of this entry.

4

prescription for morphine, which he tried to show to Officer Bratton, but that she "did not want to hear about it, didn't care about it and didn't let [him] present his prescriptions." (ECF No. 65-1 ¶18.) She referred the plaintiff to the "PAC" drug treatment program, and the plaintiff enrolled. (ECF No. 55-2 at 19.).

In notes from a May 10, 2018 office visit, Officer Bratton wrote that the plaintiff said that he found the PAC program helpful, that he was thankful for the referral. He also said that he had asked his girlfriend to marry him, and that they were getting married on May 19 at a Queens church. (ECF No. 55-2 at 18; ECF No. 57-1 at 124.) He also said that he was hiring a lawyer to file a lawsuit against DOCCS. (ECF No. 55-2 at 18.)

On May 15, 2018, the plaintiff bought a bag of heroin and snorted it. He also took one pill of his prescription codeine. (ECF No. 57-1 at 98-100; ECF No. 58 at 3; ECF No. 64-1 ¶19.) On May 16, 2018, the plaintiff tested positive for heroin "and/or synthetic opiates." (ECF No. 57-5.) He admitted to Officer Bratton that he had used heroin, but she "started yelling" at him. (ECF No. 57-1 at 104.) She directed him to come to the parole office the next morning for referral to an inpatient program, or she would have him arrested. (ECF No. 57-1 at 82; ECF No. 55-2 at 18.)

However, the plaintiff was not eligible for inpatient treatment, apparently because he was an out-of-state parolee. (ECF No. 55-2 at 17; ECF No. 55 ¶16.) On May 17, 2018, Officer Bratton met with Officer Browne and the bureau chief. (ECF No. 55-2 at 17.) They agreed that "a warrant would be issued" for the plaintiff, because Officer Bratton had made "several attempts" to get treatment for the plaintiff, and he "continued to test positive for controlled

substances and failed to complete a drug treatment program in violation of his parole conditions."[3]  (ECF No. 56 ¶¶10-11; *see also* ECF No. 55-2 at 17; ECF No. 55 ¶19.)

When the plaintiff went to the parole office on May 17, 2018, he was arrested and taken to Rikers Island.  (ECF No. 55 ¶21.)  It was his first violation in twelve years of parole.  (ECF No. 62 at 15.)  The plaintiff states that "on the day they took [him] to jail," he told Officer Browne that Officer Bratton had set him up.  (ECF No. 57-1 at 115.)  According to the plaintiff, Officer Browne said, "I don't care.  I'm going to support her."  (*Id.*)

A few days later, on May 21, 2018, Officer Bratton went to Rikers to give the plaintiff parole violation papers: a Notice of Violation (ECF No. 55-7) and a Probable Cause Hearing Waiver.  (ECF No. 55-8.)  The Notice of Violation bears the plaintiff's "signature"—which looks like an initial— at three different places, including under a checked box next to this sentence: "I do not wish to have a preliminary hearing." (ECF No. 55-7.)  The top of the document reads, "A preliminary hearing on these charges has been scheduled on . . . ." Next to that statement, the word "WAIVED" is hand-written in capital letters.  At the bottom of the page, above the final signature, "WAIVED" is again handwritten in a space labeled "I am scheduled for a preliminary hearing . . . "  (*Id.*)

The plaintiff claims that Officer Bratton covered the top portion that stated "waived" when she gave him the papers.  (ECF No. 64-1 ¶¶32-24.)  The plaintiff admits that he signed in two of the three spaces, but denies signing the space beneath the checked box waiving the preliminary hearing.  (ECF No. 57-1 at 107-09.)  According to the plaintiff, that signature is "different from the other two," (*Id.* at 109) and "somebody else signed it."  (*Id.* at 107.)

---

[3] The government does not specify who issued the warrant, and does not provide a copy of the warrant.

The second document, labeled "Probable Cause Hearing Waiver," lists five alleged violations, including use of a controlled substance and morphine without proper medical authorization and not participating in or completing drug treatment.  (ECF No. 55-8.)  On the bottom of the page in capital letters the document reads, "I admit to the violations as stated above and waive all of my procedural rights including the right to a probable cause hearing."  The document also included the disclaimer that "information related to your admission will be forwarded to the sending state for further proceedings."  (*Id.*)

The plaintiff admits that he signed this document, but claims Officer Bratton did not let him read it.  (ECF No. 57-1 at 111.)  According to the plaintiff, he "couldn't refuse" to sign the paper, because Officer Bratton said "if I wouldn't sign the paperwork I wouldn't get out," and that if he did sign he would be released in one or two weeks.  (*Id*. at 111-12.)  Officer Bratton disputes this characterization.  She says that she explained the process of preliminary and final hearings, and that he "wanted to skip the preliminary hearing and proceed straight to the final hearing because he believed it would allow him to be released more quickly."  (ECF No. 55 ¶¶23, 26.)

The plaintiff had a preliminary revocation hearing before the Board of Parole on June 1, 2018, but the case was adjourned because Officer Bratton was a "no show" and there was no "paperwork" for the violation.  (ECF No. 1 at 4; ECF No. 62 Ex. A.)  The hearing officer told the plaintiff that he would be released on June 6, 2018, but he was not released.  (ECF No. 1 at 4.)  On June 20, 2018, Officer Bratton submitted a request to New Mexico's parole office to "return subject [to New Mexico] for final hearing."  (ECF No. 55-2 at 17.)  On July 31, 2018, New Mexico "elected not to pursue extradition," and requested that the Queens Parole Office

"immediately lift the warrant and resume supervision with the support of increased reporting and a higher level of treatment."  (ECF No. 55-2 at 16.)

The plaintiff's fiancée stopped speaking to him while he was incarcerated, and he lost his apartment, his belongings and his pets.  (ECF No. 1 at 4.)  When he was released on July 31, he lived on the streets for a few days, and then in a veterans' shelter, where he used heroin "a couple of times."  (ECF No. 57-1 at 29.)  Officer Bratton was still his parole officer until August 22, 2018, when he was reassigned.  (*Id*.)

On January 18, 2019, the Ninth Judicial District Court in Clovis, New Mexico, where the plaintiff was convicted and sentenced, issued an Amended Judgment, Sentence and Commitment, imposing a ten-year term of parole, to run from the date the plaintiff was released from the New Mexico prison.  (ECF No. 1 at 5.)  On March 15, 2019, the New Mexico Adult Parole Board issued a Certificate of Parole Discharge to the plaintiff, ending his parole term effective March 6, 2019.  (ECF No. 28 at 30.)

On January 2, 2020, the plaintiff filed this action alleging that Officer Bratton falsified his drug test results and had him arrested because he complained about her to the Albany Parole Office.  He claims that he was falsely arrested and detained for over three months as a result of Officer Bratton's retaliatory conduct.  He also alleges he was denied due process when Officer Bratton induced him to waive his probable cause hearing, at which he could have challenged the arrest.  He alleges that Officer Browne did not properly supervise Officer Bratton, which enabled her to harass the plaintiff and retaliate against him.  He seeks injunctive relief to prevent further harassment and retaliation, as well as compensatory and punitive damages.  (*Id*. at 8-9.)

## STANDARD OF REVIEW

Summary judgment is appropriate only if the parties' submissions, in the form of deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 453–54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted.") (internal quotations omitted). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "The non-moving party 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful.'" *Id.* (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)). "In reviewing the evidence and the inferences that may reasonably be drawn, we may not make credibility determinations or weigh the evidence . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal citations and alterations omitted).

"Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them 'to raise the strongest arguments that they suggest.'" *Thorne v. Lewis*, No. 19-CV-24, 2021 WL 4324475, at *2 (D. Conn. Sept. 23, 2021) (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted)). Nevertheless, a *pro se* litigant may not rely on allegations unsupported by admissible evidence to overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Peralta v. Chromium Plating & Polishing Corp.*, No. 99-cv-3996, 2000 WL 34633645, at *3 (E.D.N.Y. Sept. 15, 2000). Because the defendants are moving for summary judgment, I draw all reasonable inferences in the plaintiff's favor.

## DISCUSSION

To establish a claim under Section 1983, the plaintiff must allege that "the conduct complained of . . . [was] committed by a person acting under color of state law," and "deprived . . . [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994); *see Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) (Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.") Moreover, he must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It

is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

## I.     False Arrest and Wrongful Imprisonment

Probable cause is an absolute defense to false arrest and false imprisonment. *Turner v. City of New York*, No. 18-CV-9626, 2019 WL 6173701, at *3 (S.D.N.Y. Nov. 19, 2019) (citing *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006)). Probable cause exists when a police officer has "reasonably trustworthy information[] as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citations omitted). A court determining whether there is probable cause does not "consider the subjective thoughts of arresting officers;" instead, the probable cause inquiry is an objective test that "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Brodie v. Fuhrman*, No. 07-CV-4212, 2010 WL 1189347, at *5 (E.D.N.Y. Mar. 29, 2010). A court may decide the question of probable cause as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996).

The defendants claim they had probable cause to arrest the plaintiff, and that in any event, they had *reasonable* cause and are entitled to qualified immunity. Parole officers are authorized to arrest parolees if they have reasonable cause to believe that a parolee has violated the conditions of his parole, and if a warrant has been issued. *See People ex rel. Wells v. DeMarco*, 168 A.D.3d 31, 43 (2d Dep't 2018) (citing N.Y. Executive Law § 259-i(3)(a)(i)). Reasonable cause is a less exacting standard than probable cause. *See generally Griffin v. Wisconsin*, 483 U.S. 868, 875-880 (1987) ("In some cases—especially those involving drugs or

illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society.")  Pursuant to N.Y. Exec. Law § 259–i, "[i]f a parole officer believes that a parolee . . . has violated one or more conditions of his post-release supervision, the parole officer, in consultation with a senior parole officer, may issue a warrant for his arrest." *Dupree v. Pough*, 454 F. Supp. 2d 166, 170 (S.D.N.Y. 2006) (citing N.Y. Exec. Law § 259–i(3)(a)(i)).[4]

Officer Bratton had reasonable cause to arrest the petitioner based on his admitted drug use in violation of his parole conditions.  The plaintiff concedes that he snorted heroin on May 15, 2018, and then tested positive for heroin the next day.  Moreover, he admits that he told Officer Bratton that he used heroin.   (ECF No. 64-1 ¶19; ECF No.57-1 at 103.)  Since there is no dispute that the plaintiff used heroin in violation of the conditions of his parole, there is no question that Officer Bratton had reasonable or probable cause to arrest the plaintiff.  Because the plaintiff was lawfully arrested, his imprisonment based on that arrest was also lawful.  *Leon v. City of New York*, No. 09-CV-8609, 2010 WL 2927440, at *4 (S.D.N.Y. July 1, 2010) ("False arrest and false imprisonment claims are identical in New York.") (citing *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991)).

---

[4] "Parolees are not entitled to the same level of absolute liberty afforded other citizens. Instead, their liberty rights are 'properly dependent on observance of special parole restrictions.'" *Cusamano v. Alexander*, 691 F. Supp. 2d 312, 319 (N.D.N.Y. 2009) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).  "Under N.Y. Comp. Codes R. & Regs., tit. 9, § 8003.3, parolees may be subject to special conditions—the imposition of which is left to the discretion of the New York State Board of Parole and parole officers." *Rodriguez v. City of New York*, No. 21-CV-8565, 2022 WL 3587598, at *11 (S.D.N.Y. Aug. 22, 2022).  "The Parole Board or parole officer's discretionary imposition of special conditions under this title is 'not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner.'" *Id.* (quoting *Pena v. Travis*, No. 01-CV-8534, 2002 WL 31886175, at *9 (S.D.N.Y. Dec. 27, 2002)).  There is no such allegation here.

Accordingly, the defendant officers are entitled to summary judgment on the Section 1983 false arrest and false imprisonment claims.

## II.     Retaliation

The plaintiff's retaliation claim requires a different analysis, although the result is the same. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1732 (2019) (J. Gorsuch, concurring) ("Like a Fourteenth Amendment selective arrest claim, a First Amendment retaliatory arrest claim serves a different purpose than a Fourth Amendment unreasonable arrest claim, and that purpose does not depend on the presence or absence of probable cause.")  "Although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727 (citations omitted).  However, as in the Fourth Amendment context, whether an arrest was retaliatory is an objective test that does not probe an officer's subjective intent. *Id*. at 1725 ("When reviewing an arrest, we ask whether the circumstances, viewed objectively, justify the challenged action, and if so, conclude that action was reasonable *whatever* the subjective intent motivating the relevant officials."  (internal quotation marks, alterations and citations omitted) (emphasis in original)).

The plaintiff argues that Officers Bratton and Browne arrested him not because of the parole violation, but to get back at him for complaining about Officer Bratton and for threatening to sue the parole office.  In order to prevail on this claim, the plaintiff must show that he would not have been arrested for a parole violation if he had not complained to the Albany Parole Department.  He can do this by "present[ing] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 1717.

The plaintiff has not met this burden.  He claims that Officer Bratton threatened him after he complained to the Albany Parole Office.  (ECF No. 57-1 at 77 ("She says you wrote them a letter and now I'm under investigation.  I'm going to get you.  I'm going to get you.").  But the plaintiff also alleges Officer Bratton threatened to incarcerate him for using prescription drugs long before he complained about her; indeed, those threats caused him to complain to Albany. *See* ECF No. 62 Ex. B ("I wrote this office twice regarding my parole officer's continued threats and harassment against me because I've been prescribed pain medication which contains codeine, and her continued intimidation to go to a drug treatment program or jail . . . . ")

The critical deficiency in the plaintiff's argument is the absence of any showing that the defendants treated him differently than similarly situated parolees.  In other words, the plaintiff has not shown, or even alleged, that the defendants would not have arrested similarly situated parolees for the same violations: using heroin and other narcotics while on parole.

The plaintiff alleges that he was never arrested after testing positive for prescription pain medication six to nine times during his thirteen years on parole (ECF No. 1 at 2; ECF No. 28 at 5), and once or twice after 2017.  (ECF No. 57-1 at 71.)  But he does not allege or establish that similarly situated parolees would not be arrested for using heroin.  There is no evidence that the plaintiff tested positive for heroin while assigned to another parole officer, and nevertheless was not arrested.[5]  *See, e.g., Wheeler v. Artola*, 852 F. App'x 589, 591 (2d Cir. 2021) (holding that the district court did not err in finding an arrest was not retaliatory when plaintiff did not "did not submit any evidence that other similarly situated persons had been treated differently" during a

---

[5] Although he admitted to other instances of heroin use while on parole, he does not claim that he ever tested positive for heroin at any other time while on parole.  (ECF No. 64-1 ¶6.)  The plaintiff admits that he voluntarily sought treatment for heroin addiction in 2010 while on parole, not at the request of his parole officer.  (ECF No. 57-1 at 23-25.)

bench trial); *Meyers v. City of New York*, 812 F. App'x 11, 15 (2d Cir. 2020) (affirming dismissal when the plaintiff did not allege that police refrained from arresting similarly situated people).

To be sure, this case differs from *Nieves* in a crucial way.  No objective officer would consider the plaintiff's complaints to the Albany Parole Office against Officer Bratton in determining whether an arrest was warranted for a parole violation.  *Nieves*, 139 S. Ct. at 1723-24 ("The causal inquiry is complex because protected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest.")[6]  The plaintiff does not demonstrate that his complaints rather than his drug use caused his arrest, and nothing in the record demonstrates that violations like the plaintiff's would not "nearly always trigger an arrest regardless of speech":

> To show an arrest violated the First Amendment, everyone agrees a plaintiff must prove the officer would not have arrested him but for his protected speech.  And if the only offense for which probable cause to arrest existed was a minor infraction of the sort that wouldn't normally trigger an arrest in the circumstances—or if the officer couldn't identify a crime for which probable cause existed until well after the arrest—then causation might be a question for the jury.  By contrast, if the officer had probable cause at the time of the arrest to think the plaintiff committed a serious crime of the sort that would nearly always trigger an arrest regardless of speech, then (absent extraordinary circumstances) it's hard to see how a reasonable jury might find that the plaintiff's speech caused the arrest.  In cases like that, it would seem that officers often will be entitled to dismissal on the pleadings or summary judgment.

*Nieves* at 1732 (Gorsuch, J. concurring).  A reasonable officer in the defendants' position could consider that using heroin while on parole was serious enough to warrant an arrest.  Accordingly, his retaliation claim fails.

---

[6] In *Nieves*, "[t]he officers testified that they perceived [the arrestee] to be a threat based on a combination of the content and tone of this speech, his combative posture, and his apparent intoxication."  *Nieves*, 139 S. Ct. at 1724.

III.   **Due Process**

"[T]he procedural component [of the due process clause] bars 'the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . without due process of law.'" *Walker v. Mattingly*, No. 09-CV-845, 2012 WL 1160772, at *5 (W.D.N.Y. Apr. 5, 2012) (citing *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). "'To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law.'" *Id.* (quoting *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996)).

At the time of the plaintiff's arrest, New York law required the State Division of Parole to hold a preliminary probable cause hearing within 15 days of issuance of the parole warrant to determine whether there was probable cause to believe that the plaintiff violated one or more of his parole conditions "in an important respect." N.Y. Exec. Law § 259–i(3)(c)(i).  The alleged violator may waive a preliminary hearing "either in writing on forms provided, or orally on the record at any appearance in response to a notice of violation, the recognizance hearing or the preliminary hearing." N.Y. Comp. Codes R. & Regs. tit. 9, § 8005.6.  A waiver is valid when it is knowing, intelligent and voluntary. *People ex rel. Edwards v. New York State Div. of Parole*, 37 Misc. 3d 469, 472 (N.Y. Sup. Ct. 2012) (citing *White v. New York State Div. of Parole*, 60 N.Y.2d 920, 922 (1983)).  The plaintiff claims that he did not validly waive his right to a preliminary hearing, because Officer Bratton concealed the waiver portion of one of the documents, that one of the signatures is not his, and that he signed the other document under duress.

"[A] writing clearly and unambiguously documenting the parolee's intention to relinquish his right" to a preliminary hearing is sufficient prima facie evidence, at which point the parolee must "demonstrate that the waiver was nonetheless defective" because it was not voluntarily and intelligently made. *People ex rel. Melendez v. Warden, Rikers Island Corr. Facility*, 214 A.D.2d 301, 302 (1st Dep't 1995). The defendants have provided two signed waiver documents: a "Notice of Violation," (ECF No. 55-7) and a "Probable Cause Hearing Waiver." (ECF No. 55-8.)

The plaintiff says that he did not sign the section of the "Notice of Violation" beneath the checked box next to the sentence that reads "I do not wish to have a preliminary hearing." The plaintiff maintains that the signature is "different from the other two." (ECF No. 57 at 109.) While he acknowledges that he signed in two other places, (ECF No. 57-1 at 110-111), he says that he did so under duress—that he "couldn't refuse." (ECF No. 57-1 at 111.) He also says that Officer Bratton rushed him, covered part of the page while she told him where to sign, and then quickly took the papers away before the plaintiff could read them. (ECF No. 64-1 ¶¶32-34; *see also* ECF No. 57-1 at 110 (the plaintiff "never got a chance to look at it because [] when she showed it to me, she had her hand over it . . . . and told me to sign it, and pulled it back to her, and that's how she did all the paperwork with me.")) Officer Bratton told the plaintiff that he would not be released if he did not sign the paperwork but would be released in one or two weeks if he signed.[7] (ECF No. 57-1 at 112.)

---

[7] The plaintiff had never been arrested for a parole violation or been to Rikers, so he was not aware of his rights or the violation procedures. (ECF No. 1 at 4.) The defendants argue that the Court should "infer" that the waiver was knowing, because the plaintiff became a paralegal in prison, and worked as a paralegal for the New Mexico Department of Corrections. (ECF No. 64 at 8.) The defendants cite no authority for this proposition, nor is the Court aware of any. Indeed, it is hard to see how working as a paralegal in another state would have alerted the plaintiff to the intricacies of securing a parole violation hearing in New York.

The plaintiff has adequately alleged that the signature beneath the box waiving his hearing is different than the others. *See Alvarado v. City of New York*, 482 F. Supp. 2d 332, 339 (S.D.N.Y. 2007) (ambiguity existed as to nature of waiver where box indicating waiver above plaintiff's signature was circled rather than checked) *and Melendez*, 214 A.D.2d at 302 ("The notice form proffered by respondent, with its contradictory entries and unexplained amendments manifestly fails to establish the claimed relinquishment.")  The plaintiff has also adequately alleged that he "was induced to sign the form by erroneous information and misleading advice." *People ex rel. Wiggs v. Warden*, 79 N.Y.S.3d 867, 872 (N.Y. Sup. Ct. 2018).

 In *Wiggs*, the parolee signed the waiver form after his parole officer mistakenly informed him that he would be incarcerated for no more than 90 days; in fact, Wiggs faced a minimum of 15 months incarceration. *Id*. at 872-73.  Although Wiggs did not allege that the parole officer was motivated by malice, the court determined that "[a] parole officer may have no duty to answer questions about the hearing process, but if the choice is to do so, the answers must be accurate." *Id*. at 273.  The plaintiff has not simply alleged that he "did not pay attention to the document [he] was signing." *People ex rel. Adams v. Warden of Penitentiary of City of New York*, 801 N.Y.S.2d 779 (Sup. Ct. 2005).  Rather, he claims Officer Bratton told him he would be released in one to two weeks if he signed the paperwork.  He was not released for another seventy days, on July 31st.  While Officer Bratton denies that she coerced the plaintiff, she concedes that she "explained the process" to him, and that he "wanted to skip the preliminary hearing and proceed straight to the final hearing because he believed it would allow him to be released more quickly."  (ECF No. 55 ¶¶23, 26.).

The defendant does not provide any detail about the plaintiff's hearing or why he was incarcerated for so long.  Nor does the defendant explain why Officer Bratton did not appear at

the plaintiff's preliminary violation hearing on June 1, 2018, which could have prolonged the plaintiff's incarceration. The plaintiff was released without a final hearing after New Mexico declined to extradite him, which the plaintiff also does not explain. Under these circumstances, there is genuine dispute of material fact about what Officer Bratton said to the plaintiff about the hearing process, whether he knowingly, intelligently and voluntarily waived her rights, and about the process itself.[8]

The plaintiff has not adequately plead that Senior Officer Browne was personally involved in the hearing waiver. Indeed, the plaintiff alleges that Officer Bratton was the only officer present when he signed the waiver documents. (*See* ECF No. 57-1 at 113.) Accordingly, all claims against Officer Brown are dismissed. *See Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013); *Tangreti v. Bachmann*, 983 F.3d 609, 613 (2d Cir. 2020) (A plaintiff must prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

---

[8] Officer Bratton does not claim that she is entitled to the defense of qualified immunity on the plaintiff's due process claims. Indeed, the plaintiff's right to a probable cause hearing was "clearly established," so qualified immunity is unavailable. In addition, "[p]unitive damages are available to a plaintiff bringing a Section 1983 claim who has shown that defendants acted with reckless or callous disregard for plaintiff's rights and intentionally violates federal law.'" *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 108 (E.D.N.Y. 2015) (internal quotations omitted). The plaintiff has alleged that Officer Bratton intentionally misled him and forced him to sign the waiver paperwork. "Generally, the issue of whether defendants' conduct is sufficiently serious to warrant punitive damages is a question best left to the jury." *Id*.

**CONCLUSION**

For the reasons discussed above, the defendants' motion for summary judgment on the plaintiff's claims against Officer Brown and his claims for false arrest and retaliation is GRANTED.  The defendants' motion for summary judgment on plaintiff's due process claim against Officer Bratton is DENIED.  The plaintiff is directed to work with the *pro se* office to file a motion to have *pro bono* counsel appointed for the remainder of this case.

**SO ORDERED.**

s/Ann M. Donnelly

_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      March 28, 2023